**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| Seller Hardware, LLC,<br><br>Plaintiff,<br><br>-against-<br><br>Ship Hero, LLC,<br><br>Defendant. | : | CASE NO. 1:26-cv-03493-GHW<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANT SHIP HERO LLC'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT**

## TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ..... 1

II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY. ..... 2

A. Plaintiff's Original Complaint and Ship Hero's First Motion to Dismiss. ..... 2

B. Plaintiff's FAC in Response to Ship Hero's Motion to Dismiss. ..... 3

III. LEGAL STANDARD ..... 4

IV. ARGUMENT ..... 5

A. The FAC Must Be Dismissed Because Plaintiff's Indirect Infringement Theory Directly Contradicts the Patent Claims and Specification. ..... 5

1. The '367 Patent Claims Do Not Allow for the "Controller" to Be a Handheld or Mobile Device Running a Mobile Application. ..... 5

2. The Patent Specification Describes the "Controller" and Handheld or Mobile Device as Separate Components that Perform Distinct Functions. ..... 7

3. The FAC is Ripe for Dismissal Under Rule 12(b)(6). ..... 9

B. The FAC Fails to Plausibly Allege Pre-Suit Willful or Indirect Infringement. ..... 11

C. Leave to Amend Would be Futile. ..... 13

V. CONCLUSION ..... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AK Meeting IP, LLC v. Epic Games, Inc.*,
No. 1:23-cv-8214, 2025 WL 1865953 (S.D.N.Y. July 7, 2025)....5, 10, 11, 14

*ALD Soc., LLC v. Verkada, Inc.*,
654 F. Supp. 3d 972 (N.D. Cal. 2023)....4, 10

*AlexSam, Inc. v. Aetna, Inc.*,
119 F.4th 27 (Fed. Cir. 2024)....4, 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....4

*Bayer Healthcare LLC v. Baxalta Inc.*,
989 F.3d 964 (Fed. Cir. 2021)....11

*In re Bill of Lading Transmission and Processing System Patent Lit.*,
681 F.3d 1323 (Fed. Cir. 2012)....5, 11

*Bot M8 LLC v. Sony Corp. of Am.*,
4 F.4th 1342 (Fed. Cir. 2021)....4, 10

*Broidy Cap. Mgmt. LLC v. Benomar*,
944 F.3d 436 (2d Cir. 2019)....13

*Chunn v. Amtrak*,
916 F.3d 204 (2d Cir. 2019)....13

*Commil USA, LLC v. Cisco Sys., Inc.*,
575 U.S. 632 (2015)....11

*Cuoco v. Moritsugu*,
222 F.3d 99 (2d Cir. 2000)....13

*DigiMedia Tech, LLC v. ViacomCBS Inc.*,
592 F. Supp. 3d 291 (S.D.N.Y. 2022)....5

*e.Digital Corp. v. iBaby Labs, Inc.*,
No. 15-CV-05790-JST, 2016 WL 4427209 (N.D. Cal. Aug. 22, 2016)....4

*Fluidigm Corp. v. IONpath, Inc.*,
No. 19-05639, 2020 WL 408988 (N.D. Cal. Jan. 24, 2020)....12

*Garay v. Novartis Pharms. Corp.*,
576 F. App'x 24 (2d Cir. 2014) .......... 13

*Kaufman v. Microsoft Corp.*,
No. 16 Civ. 2880 (AKH), 2020 WL 364136 (S.D.N.Y. Jan. 22, 2020) .......... 13

*Loyal-T Sys. LLC v. Am. Express Co.*,
No. 24-cv-7605, 2026 WL 1949508 (S.D.N.Y. July 6, 2026) .......... 14

*Lyda v. CBS Corp.*,
838 F.3d 1331 (Fed. Cir. 2016) .......... 14

*Mobile Acuity Ltd. v. Blippar Ltd.*,
110 F.4th 1280 (Fed. Cir. 2024) .......... 14

*Nalco Co. v. Chem-Mod, LLC*,
883 F.3d 1337 (Fed. Cir. 2018) .......... 11

*Network Sys. Techs., LLC v. Qualcomm Inc.*,
No. 22-cv-01331, 2023 WL 11833572 (W.D. Tex. July 21, 2023) .......... 12

*Nystrom v. TREX Co.*,
424 F.3d 1136 (Fed. Cir. 2005) .......... 7

*Railware, Inc. v. Nat'l R.R. Passenger Corp.*,
No. 22-cv-5013, 2023 WL 5432860 (S.D.N.Y. Aug. 23, 2023) .......... 12

*Richardson v. Adobe, Inc.*,
No. 22 Civ. 7114 (PGG), 2024 WL 4135347 (S.D.N.Y. Sept. 10, 2024) .......... 11

*Secured Mail Sols. LLC v. Univ. Wilde, Inc.*,
873 F.3d 905 (Fed. Cir. 2017) .......... 4, 10

*Shunock v. Apple, Inc.*,
825 F. Supp. 3d 366 (S.D.N.Y. 2026) .......... 13

*State Indus., Inc. v. A.O. Smith Corp.*,
751 F.2d 1226 (Fed. Cir. 1985) .......... 13

*Weisner v. Google LLC*,
No. 20 CIV. 2862 (AKH), 2021 WL 6424921 (S.D.N.Y. Jan. 4, 2021) .......... 4

*WinView Inc. v. DraftKings Inc.*,
No. 21-13405, 2025 WL 1908757 (D.N.J. July 11, 2025) .......... 12

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) .......... 1, 4, 9, 15

Defendant Ship Hero, LLC ("Ship Hero") respectfully submits this memorandum of law in support of its Motion to Dismiss the First Amended Complaint ("FAC") filed by Plaintiff Seller Hardware, LLC ("Plaintiff" or "Seller Hardware") pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted ("Motion").

## I. PRELIMINARY STATEMENT

Plaintiff's sole count for infringement of U.S. Patent No. 11,988,367 (the "'367 Patent") is fatally deficient under the *Iqbal/Twombly* pleading standard applicable to patent infringement claims. Having abandoned its direct infringement claim and conceding that Ship Hero's accused "Pick-to-Light" warehouse fulfillment product does not itself include the asserted patent's claimed "controller" component, Plaintiff now asserts only indirect (induced and contributory) infringement. To sustain these indirect infringement claims, Plaintiff must plausibly allege that a third-party user directly infringes the '367 Patent. The FAC fails to do so, because it asserts an infringement theory that flatly contradicts the '367 Patent. The FAC's newly added claim chart identifies the claimed "controller configured to be coupled to the hub and generate control signals" as "an iOS device (iPad or iPhone) with the latest ShipHero app installed." FAC, Ex. B at 2. This infringement theory is irreconcilable with the '367 Patent's claims and specification, which unambiguously establish that the "controller" and "handheld or mobile device MD" running a software application are separate and distinct components. Plaintiff has already had a full and fair opportunity to cure these defects; no repackaged theory or newly alleged facts can change what the claims and specification say, and permitting yet another attempt would only waste the parties' and the Court's resources.

Plaintiff's pre-suit indirect and willful infringement claims fail for an additional, independent reason. The FAC's pre-suit willful and indirect infringement allegations are materially unchanged from the original Complaint and still fail to plausibly allege that Ship Hero

had pre-suit knowledge of *infringement*, as required. For these reasons, and because leave to further amend would be futile, the Court should dismiss the FAC with prejudice.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Plaintiff's Original Complaint and Ship Hero's First Motion to Dismiss.

Seller Hardware filed the original Complaint on April 28, 2026, alleging direct, induced, contributory, and willful infringement of the '367 Patent. Dkt. 1. The '367 Patent claims a "sorting system" comprised of various components, including "a plurality of sorter light boxes," "a hub," and "a controller." Dkt. 1-1 (Compl., Ex. A, '367 Patent) at Claim 1. Plaintiff originally alleged that Ship Hero's Pick-to-Light warehouse fulfillment product infringes claims 1, 2, 5, 7, 9–12, and 16 of the '367 Patent. Compl. ¶¶ 2, 8, 12, 13.

Ship Hero filed a pre-motion letter on June 18, 2026, seeking leave to file a motion to dismiss the Complaint on multiple grounds. Dkt. 14. Among other things, Ship Hero argued that Plaintiff's Complaint failed to state a claim for direct infringement because it lacked any plausible allegation that Pick-to-Light includes the claimed "controller configured to be coupled to the hub and generate control signals." *See id.* at 2. In its June 23, 2026 response letter, Plaintiff for the first time suggested that Ship Hero's "mobile app and Shield hub are used together as the control path generating and relaying the control signals," even though Plaintiff made no such allegation in the Complaint. Dkt. 18 at 2.

This Court held a pre-motion conference on June 26, 2026. At the conference, Ship Hero's counsel explained that Plaintiff's infringement theory, offered for the first time in its pre-motion response letter, did not pass Rule 12 muster because the '367 Patent's claims and specification directly contradict Plaintiff's contention that the Ship Hero mobile app can comprise the claimed "controller." Hr'g Tr. (6/26/26) at 5:25–12:11. Plaintiff's counsel could not identify any support in the patent or the pleadings for Plaintiff's infringement theory, *see id.* at

16:13–22:22, because there is none. This Court permitted Ship Hero to file its Motion to Dismiss and stayed discovery pending its resolution. Dkt. 21.

Ship Hero filed its Motion to Dismiss the Complaint on July 14, 2026. Dkt. 22, 23. Among other things, Ship Hero argued that any amendment advancing Plaintiff's "mobile app as the controller" infringement theory would be futile because it contradicts the '367 Patent's intrinsic record. Dkt. 23 at 12–15. Ship Hero also argued that Plaintiff failed to state a plausible claim for pre-suit indirect and willful infringement because the Complaint was devoid of facts showing Ship Hero knew of any alleged infringement before Plaintiff filed suit. *Id.* at 10–12.

**B. Plaintiff's FAC in Response to Ship Hero's Motion to Dismiss.**

In response to Ship Hero's first Motion, Plaintiff filed the FAC on August 5, 2026. Dkt. 24. The FAC made two changes directly relevant to this Motion. *First*, Plaintiff abandoned its direct infringement claim, conceding that the accused Pick-to-Light product does not itself include the claimed "controller" component. FAC ¶ 11 ("The Accused Products include each and every component protected by the '367 Patent *except the controller device*") (emphasis added). The FAC now asserts only induced and contributory infringement against Ship Hero, alleging that Pick-to-Light users are directly infringing "at least" Claim 1 of the '367 Patent. *Id.* ¶¶ 16-23.

*Second*, the FAC adds Exhibit B, a claim chart purporting to map Claim 1 to the accused Pick-to-Light product features. Dkt. 24-2. The claim chart identifies the claimed "controller" as "an iOS device (iPad or iPhone) with the latest ShipHero app installed." FAC, Ex. B at 2. Plaintiff further asserts that "[t]he user can then use the iOS device to 'Scan the item, and the appropriate tote light will illuminate.'" *Id.* (citing FAC., Ex. H). Equating an iOS device equipped with a mobile application and used for scanning with the claimed "controller" represents a marked shift from Plaintiff's pre-motion response letter, in which it argued that Ship Hero's "mobile app and Shield hub" together function as the controller. Dkt. 18 at 2. Plaintiff's

new theory fares no better than the baseless arguments it advanced in its prior pre-motion response letter and at the pre-motion hearing.

Meanwhile, the FAC's pre-suit willful and indirect infringement allegations remain materially unchanged from the original Complaint. *See, e.g.*, FAC ¶¶ 14, 15.

## III. LEGAL STANDARD

"To survive a motion to dismiss under Rule 12(b)(6)," a patent-infringement claim must satisfy the pleading "standard the Supreme Court articulated in *Iqbal* and *Twombly*." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021). "The relevant inquiry under *Iqbal*/*Twombly* is whether the factual allegations in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." *Id.* Under this standard, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

For patent infringement claims, "the Complaint must 'plausibly allege that the accused product practices each of the limitations found in at least one asserted claim.'" *Weisner v. Google LLC*, No. 20 CIV. 2862 (AKH), 2021 WL 6424921, at *1 (S.D.N.Y. Jan. 4, 2021) (quoting *e.Digital Corp. v. iBaby Labs, Inc.*, No. 15-CV-05790-JST, 2016 WL 4427209, *3 (N.D. Cal. Aug. 22, 2016)). "[A] patentee may subject its claims to early dismissal by pleading facts that are inconsistent with the requirements of its claims." *AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 35 (Fed. Cir. 2024); *see also Bot M8*, 4 F.4th at 1346 (same). "[I]n ruling on a 12(b)(6) motion, a court need not accept as true allegations that contradict . . . the claims and the patent specification." *Secured Mail Sols. LLC v. Univ. Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017). Moreover, "the court may dismiss a complaint prior to claim construction when the complaint rests on an implausible claim construction." *ALD Soc., LLC v. Verkada, Inc.*, 654 F. Supp. 3d

972, 979 (N.D. Cal. 2023); *see also AK Meeting IP, LLC v. Epic Games, Inc.*, No. 1:23-cv-8214, 2025 WL 1865953, at *4 (S.D.N.Y. July 7, 2025) (same). "In deciding a motion to dismiss, the court may consider the complaint, the patent, the intrinsic record, and materials subject to judicial notice." *DigiMedia Tech, LLC v. ViacomCBS Inc.*, 592 F. Supp. 3d 291, 297–98 (S.D.N.Y. 2022).

## IV. ARGUMENT

### A. The FAC Must Be Dismissed Because Plaintiff's Indirect Infringement Theory Directly Contradicts the Patent Claims and Specification.

Because the FAC now asserts only indirect (induced and contributory) infringement, Plaintiff must plausibly allege an underlying act of direct infringement by a third party. *In re Bill of Lading Transmission and Processing Sys. Patent Lit.*, 681 F.3d 1323, 1333 (Fed. Cir. 2012) ("[T]here can be no inducement or contributory infringement without an underlying act of direct infringement."). The FAC cannot satisfy this requirement because the '367 Patent's claims and specification directly contradict its identification and characterization of the "controller" element.

#### 1. *The '367 Patent Claims Do Not Allow for the "Controller" to Be a Handheld or Mobile Device Running a Mobile Application.*

The FAC's claim chart (Exhibit B) identifies the claimed "controller configured to be coupled to the hub and generate control signals for the sorter light boxes" as "an iOS device (iPad or iPhone) with the latest ShipHero app installed." FAC, Ex. B at 2. Plaintiff further asserts in Exhibit B that the user can "use the iOS device to 'Scan the item, and the appropriate tote light will illuminate.'" *Id.* (citing Compl., Ex. H). But each functionality that Plaintiff attributes to the iOS device in its claim chart (*i.e.*, running Ship Hero's mobile software application and scanning items) is attributed to a separate mobile or handheld device in the '367 Patent, *not* the "controller." The '367 Patent makes unambiguously clear that the "controller" is not, and cannot

be, a handheld device with a mobile application (which emits commands *to the controller*).

Indeed, the patent claims foreclose Plaintiff's latest infringement theory. Independent Claim 1, reproduced below, recites a "sorting system" comprised of several structural components, including "a plurality of sorter light boxes," a "hub," and a "controller." The combination of independent Claim 1 and dependent Claims 5 and 6, also reproduced below, unambiguously establishes that the claimed controller is different from a handheld device equipped with a mobile software application:

1. A sorting system comprising:

   a plurality of sorter light boxes each configured to be mounted to a respective shelf, and each configured to be coupled to another one of the sorter light boxes to define a chain of sorter light boxes;

   a hub configured to be coupled to a first sorter light box in the chain of sorter light boxes and to operate as a concentrator of control signals and power for the plurality of sorter light boxes in the chain of sorter light boxes; and

   a controller configured to be coupled to the hub and generate control signals for the sorter light boxes.

* * *

5. The sorting system of claim 1, wherein the controller is configured to generate the control signals for the plurality of sorter light boxes based upon commands received via an externally coupled network and sorter scans from a handheld device coupled thereto.

6. The sorting system of claim 5, wherein the handheld device includes a mobile application to emit the commands based upon the sorter scans by the handheld device.

According to Claim 1, the "controller [is] configured to be coupled to the hub and generate control signals for the sorter light boxes." '367 Patent, Claim 1. Claim 1 thus expressly requires the "controller" to "generate control signals." Dependent Claim 5 adds a limitation that specifies how the controller generates control signals for the sorter light boxes. That is, "based

upon commands received via an externally coupled network and *sorter scans from a handheld device* coupled thereto." *Id*., Claim 5 (emphasis added). Claim 5 thus confirms that the handheld device and controller are distinct components.

Dependent Claim 6 adds a further limitation that the "handheld device includes a mobile application to emit the commands based upon the sorter scans by the handheld device." *Id*., Claim 6. Put simply, Claim 6 specifies that the commands the controller receives under Claim 5 originate from a mobile application running on the handheld device.

Similarly, independent Claim 11 recites "a controller coupled to the plurality of shipper light boxes and configured to generate control signals for the shipper light boxes based upon commands received via an externally coupled network." '367 Patent, Claim 11. Claim 12, which depends from Claim 11, adds a requirement that the "controller is configured to generate the control signals for the shipper light boxes based upon commands received via the externally coupled network and sorter scans from a handheld device coupled thereto." '*Id.*, Claims 12.

Plaintiff's theory collapses two distinct claim elements into one: it treats the controller as a handheld device, when the claims make clear these are separate components. The controller receives commands and generates control signals; the handheld device scans and runs a mobile application that emits commands to the controller. The Federal Circuit has long held that "[w]hen different words or phrases are used in separate claims, a difference in meaning is presumed." *Nystrom v. TREX Co.*, 424 F.3d 1136, 1143 (Fed. Cir. 2005). The "controller" cannot also be the "handheld device" when the claims clearly recite both terms as separate and distinct components performing different functions.

2. *The Patent Specification Describes the "Controller" and Handheld or Mobile Device as Separate Components that Perform Distinct Functions.*

The '367 Patent specification leaves no doubt: the controller cannot be a handheld/mobile

device that is equipped with a mobile software application and used to scan items. The specification defines the "controller" as follows: "Controller is a computer (e.g. PC running Microsoft Windows and the Skublox Hub Application)." '367 Patent, at 4:54–58. The patent further identifies the "controller" as one of "four hardware devices (sorter light box 12, shipper light box 14, hub 16 and controller 20)." *Id.* at 6:38–41. Nowhere does the specification suggest that a handheld device equipped with a mobile application can be the claimed "controller."

The patent separately discloses "a mobile application software that is run on a handheld or mobile device MD" as a component that is distinct from, but potentially coupled to, the controller. '367 Patent, at 6:34–38. For example, Figure 2 shown below (annotations added) illustrates the controller and handheld or mobile device (MD) as distinct system components:




FIG. 2

Moreover, the specification describes "software components in the system 10 that may include: the hub software (e.g. web application) that is run on the *controller 20* or a local computing device (e.g. a laptop or PC); [and] a *mobile application software that is run on a handheld or mobile device MD*." '367 Patent, at 6:34-38 (emphasis added). The specification further explains that an operator (*i.e.*, "sorter") "scans a picked product with a mobile application

(e.g. running on a handheld or mobile device MD). *Id.* at 5:32-33. These passages explicitly distinguish the controller (a computer on which hub software runs) from the handheld device (which runs separate mobile application software). The patent consistently treats the controller and the handheld device as different system components running different applications.

The specification also makes clear that the "controller" and "handheld or mobile device MD" perform distinct functions within the system. Consistent with dependent Claims 5 and 6 addressed above, the specification states: "The controller may be configured to generate the control signals for the plurality of sorter light boxes based upon commands received via an externally coupled network and sorter scans from a handheld device coupled thereto. The handheld device may include a mobile application to emit the commands based upon the sorter scans by the handheld device." '367 Patent, at 2:52–58. Thus, the mobile application (included in the handheld device) *emits commands* to the controller; the controller, in turn, *generates control signals* based on those commands. These are separate components performing distinct functions.

Finally, the specification specifically describes "smartphones," "tablet computers," and "iPads" as exemplary mobile or handheld devices, not controllers. '367 Patent, at 4:35–47. Plaintiff's claim chart identifies the "controller" as an "iOS device (iPad or iPhone)." FAC, Ex. B at 2. But the patent itself identifies an iPad as a mobile/handheld device that is distinct from the controller. Plaintiff's theory that an iPad or iPhone with the Ship Hero app installed is the "controller" thus directly contradicts the teachings of the '367 Patent.

3. *The FAC is Ripe for Dismissal Under Rule 12(b)(6).*

Plaintiff's implausible infringement theory renders the FAC ripe for Rule 12 dismissal. This Court need not accept as true allegations that contradict the patent's claims and specification. *Secured Mail Sols.*, 873 F.3d at 913. And "a patentee may subject its claims to early dismissal by pleading facts that are inconsistent with the requirements of its claims." *Bot*

*M8*, 4 F.4th at 1346; *see also AlexSam*, 119 F.4th at 35 (same). District courts routinely dismiss patent infringement complaints where the complaint rests on an implausible claim interpretation. *See AK Meeting IP*, 2025 WL 1865953, at *4; *ALD Soc.*, 654 F. Supp. 3d at 979.

This Court's decision in *AK Meeting IP* is directly on point. There, this Court dismissed a patent infringement complaint and denied leave to amend where the plaintiff's amended theory of infringement contradicted the asserted patent. This Court held that "Plaintiff's amended theory of infringement is not only still implausible, it utterly contradicts the theory of infringement Plaintiff advanced in its prior complaint." 2025 WL 1865953, at *7. The Court further held that "[b]ecause Plaintiff has failed to plausibly plead direct infringement, he has failed to plausibly plead indirect infringement." *Id.*

The same is true here. Like the plaintiff in *AK Meeting IP*, Plaintiff has cobbled together shifting, contradictory theories of infringement that fall apart the moment they are tested against the patent language. The original Complaint failed to identify any controller at all. Plaintiff's pre-motion response letter then argued that Ship Hero's "mobile app and Shield hub" together function as the controller. Dkt. 18 at 2. And now, the FAC asserts that a third-party iOS device equipped with the Ship Hero mobile app is the controller. FAC, Ex. B at 2. Furthermore, Plaintiff's new infringement theory cannot be squared with the FAC's vague and repeated assertion that the Accused Products infringe "at least" Claim 1 (*e.g.*, FAC ¶ 12). In its original Complaint, Plaintiff initially asserted that the Accused Products infringe Claims 5 and 12, recited above. Compl. ¶ 13. However, both Claims 5 and 12 make clear that the claimed "controller" must be separate from the claimed "handheld device" of Claims 5 and 12. Given its latest "mobile device as the controller" infringement read, it is not surprising that Plaintiff decided to not explicitly assert infringement of Claims 5 or 12 in the FAC.

Because Plaintiff cannot plausibly allege that any third-party user directly infringes by using the claimed system, for the simple reason that the claimed "controller" is not a handheld device equipped with a mobile software application, the FAC's induced and contributory infringement claims necessarily fail. *In re Bill of Lading*, 681 F.3d at 1333; *AK Meeting IP*, 2025 WL 1865953, at *7.

**B. The FAC Fails to Plausibly Allege Pre-Suit Willful or Indirect Infringement.**

The FAC's pre-suit indirect and willful infringement claims fail on an additional, independent ground. All forms of indirect infringement require knowledge of the patent *and* knowledge of infringement. *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1355 (Fed. Cir. 2018) ("For an allegation of induced infringement to survive a motion to dismiss, a complaint must plead facts plausibly showing that the accused infringer 'specifically intended [another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement.'"); *see Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015) ("Like induced infringement, contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement."). Willful infringement similarly requires knowledge of the patent and knowledge of infringement. *See Richardson v. Adobe, Inc.*, No. 22 Civ. 7114 (PGG), 2024 WL 4135347, at *15 (S.D.N.Y. Sept. 10, 2024) ("To survive a motion to dismiss allegations of willful infringement," plaintiffs must "plausibly allege that the accused infringer deliberately or intentionally infringed a patent-in-suit after obtaining knowledge of that patent *and* its infringement.") (emphasis added); *see also Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 987–88 (Fed. Cir. 2021) ("Knowledge of the asserted patent and evidence of infringement is necessary, but not sufficient, for a finding of willfulness."). The FAC fails to plausibly plead either pre-suit indirect or willful infringement under these standards.

The FAC's pre-suit willful and indirect infringement allegations remain materially

unchanged from the original Complaint, despite Ship Hero raising these deficiencies in its prior Motion to Dismiss. Dkt. 23 at 10–12. As with the original Complaint, the FAC's sole allegation of pre-suit knowledge of the '367 Patent rests on a letter dated May 20, 2025 that purportedly "notified Defendant of the existence of the '367 Patent." FAC ¶ 14, Ex. D. But that letter merely identified the patent and invited licensing discussions; it did not charge Ship Hero with infringement. Dkt. 24-4 (FAC, Ex. D).

Knowledge of a patent, without more, is insufficient to establish knowledge of infringement for indirect or willful infringement purposes. *Railware, Inc. v. Nat'l R.R. Passenger Corp.*, No. 22-cv-5013, 2023 WL 5432860, at *12 (S.D.N.Y. Aug. 23, 2023) ("[K]nowledge of the existence of a patent and nothing more does not warrant a claim for [willfulness]."); *WinView Inc. v. DraftKings Inc.*, No. 21-13405, 2025 WL 1908757, at *10, *12 (D.N.J. July 11, 2025) (dismissal warranted if complaint "does not provide sufficient allegations for the Court to infer [defendant's] knowledge of infringement"); *Network Sys. Techs., LLC v. Qualcomm Inc.*, No. 22-cv-01331, 2023 WL 11833572, at *14 (W.D. Tex. July 21, 2023) ("knowledge of infringement" element "requires more than mere knowledge of the patent"); *Fluidigm Corp. v. IONpath, Inc.*, No. 19-05639, 2020 WL 408988, at *2 (N.D. Cal. Jan. 24, 2020) ("Bare allegations of knowledge of a patent do not support an inference of knowledge of alleged infringement.").

Plaintiff's reliance on 2022 LinkedIn messages (FAC ¶ 15, Ex. E) fares no better to establish Ship Hero's requisite knowledge of the '367 Patent, let alone knowledge of infringement. Those messages predate the '367 Patent's issuance in May 2024 by two years. *Compare* FAC, Ex. E *with* FAC, Ex. A. Communications predating a patent's issuance cannot establish knowledge of infringement of that patent. *Shunock v. Apple, Inc.*, 825 F. Supp. 3d 366,

384 (S.D.N.Y. 2026) ("To willfully infringe a patent, the patent must exist and one must have knowledge of it.") (citing *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985)); *see also Kaufman v. Microsoft Corp.*, No. 16 Civ. 2880 (AKH), 2020 WL 364136, at *4 (S.D.N.Y. Jan. 22, 2020) ("Knowledge of patent applications, even applications for the patent at issue, do not establish knowledge of the patent.").

Because the FAC merely alleges facts to support pre-suit knowledge of the '367 Patent, without any factual allegations to plausibly infer that Ship Hero had knowledge of its alleged infringement, Plaintiff's pre-suit indirect and willful infringement claims must be dismissed.

**C. Leave to Amend Would be Futile.**

Should the Court dismiss the FAC, Ship Hero respectfully submits that dismissal should be with prejudice because any further amendment would be futile. "While, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, 'leave to amend shall be freely given when justice so requires,' it is within the sound discretion of the district court to grant or deny leave to amend for good reason, including futility." *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to [Rule] 12(b)(6)." *Garay v. Novartis Pharms. Corp.*, 576 F. App'x 24, 25 (2d Cir. 2014); *see also Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("a futile request to replead should be denied"); *Chunn v. Amtrak*, 916 F.3d 204, 208 (2d Cir. 2019) ("Amendment is futile if it fails to cure prior deficiencies.").

Here, dismissal with prejudice is appropriate because Plaintiff cannot allege a plausible basis for infringement even if the Court granted leave to amend. Plaintiff has now had *two* opportunities to plead a viable infringement theory, the original Complaint and the FAC, and has failed both times. Worse, Plaintiff has advanced materially different theories of infringement, each contradicted by the '367 Patent, and did not supplement its pre-suit indirect or willful

infringement claims with any more alleged facts.

As established above, the intrinsic record forecloses any theory that equates the "controller" with a handheld or mobile device equipped with a mobile software application and used to scan items. The patent itself dictates this fundamental constraint, and further amendment cannot cure it. This Court's decision in *AK Meeting IP* is again instructive. There, this Court dismissed a patent infringement complaint with prejudice and denied leave to amend where "Plaintiff's amended theory of infringement is not only still implausible, it utterly contradicts the theory of infringement Plaintiff advanced in its prior complaint." 2025 WL 1865953, at *7. The same is true here: Plaintiff's serially shifting theories of infringement, from identifying no controller, to the mobile app plus Shield hub, to an iOS device with the Ship Hero app, are each implausible, and the patent directly contradicts each one. *See also Loyal-T Sys. LLC v. Am. Express Co.*, No. 24-cv-7605, 2026 WL 1949508 (S.D.N.Y. July 6, 2026) (dismissing with prejudice after plaintiff failed to cure deficiencies in amended complaint).

Because Plaintiff has had ample opportunity to assert a plausible infringement claim, but cannot, the Court should dismiss the FAC with prejudice. *See Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1295 (Fed. Cir. 2024) (affirming denial of request for leave to amend patent infringement complaint where proposed amendment "does not fix the problems plaguing the operative complaint"); *Lyda v. CBS Corp.*, 838 F.3d 1331, 1341 (Fed. Cir. 2016) (district court did not abuse discretion in denying leave to amend where district court "freely allow[ed] [the] plaintiff to amend its complaint in the face of a motion to dismiss, but curtail[ed] leave to amend where the plaintiff declines to do so until after the court finds the pleadings insufficient").

## V. CONCLUSION

For the foregoing reasons, Defendant Ship Hero, LLC respectfully requests that the Court grant its Motion and dismiss Plaintiff's FAC with prejudice pursuant to Rule 12(b)(6).

Dated: Dallas, Texas
October 2, 2026

**DLA PIPER LLP (US)**

By: /s/ *Matthew Ganas*
Matthew Ganas

1900 N. Pearl Street
Suite 2200
Dallas, TX 75201-2482
Telephone: 214.743.4500
matt.ganas@us.dlapiper.com

Erik R. Fuehrer
erik.fuehrer@us.dlapiper.com
3203 Hanover St., Suite 100
Palo Alto, CA 94304
Tel: 650.833.2045
Fax: 650.687.1243
Erik.fuehrer@us.dlapiper.com

*Attorneys for Defendant Ship Hero, LLC*

**Certificate of Compliance**

I hereby certify that on October 2, 2026, I electronically filed the foregoing Memorandum of Law in Support of Ship Hero, LLC Motion to Dismiss Complaint. The memorandum has a word count of 4,442 words and complies with Local Rule 7.1(c) of the United States District Courts for the Southern and Eastern Districts of New York.

_/s/ *Matthew Ganas*
Matthew Ganas